1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

FREDERICK W. RICHARDSON,

Plaintiff,

v.

US DEP'T OF LABOR, *et al.*,

Defendants.

CASE NO. 2:20-cv-00923-LK

REPORT AND RECOMMENDATION

NOTED FOR: July 1, 2022

The District Court has referred the motion to dismiss the amended complaint to the undersigned, pursuant to 28 U.S.C. § 636(b).  Dkt. 36.  Plaintiff, a federal employee who claims that he injured his knee on the job in 1991, has filed an amended complaint under the Federal Employees Compensation Act ("FECA"), 5 U.S.C. §§ 8101, *et seq.*  He asserts that the Director of the Office of Workers' Compensation Programs ("OWCP") violated due process by ignoring his requests to add a left shoulder and neck injury, atrial fibrillation, and post-traumatic stress disorder ("PTSD") to his FECA claim after initially accepting the claim related to his knee.

Defendants move to dismiss plaintiff's complaint for lack of subject matter jurisdiction.

1    They argue that a portion of FECA barring federal courts from hearing such claims prevents the

2    exercise of subject matter jurisdiction here.  However, plaintiff's evidence that for years, OWCP

3    ignored various requests related to his claim creates a substantial claim of a procedural due

4    process violation, so that plaintiff fits within an exception from the bar on this Court's

5    jurisdiction.  The District Court should deny the motion to dismiss.  Dkt. 36.

6                                        **BACKGROUND**

7            Plaintiff initiated this matter in June 2020.  Dkt. 1.  Plaintiff brought suit under the

8    Federal Tort Claims Act against the OWCP and various other, individual defendants, claiming

9    that OWCP negligently handled his FECA claim for benefits in a way that violated his due

10   process rights and caused physical and mental injuries.  *See generally* Dkt. 1.

11           The District Court dismissed the complaint with leave to amend, on defendants' motion

12   for dismissal on the basis of lack of subject matter jurisdiction.  Dkt. 17.  The Court summarized

13   plaintiff's allegations about his right knee injuries, surgery, and treatment; his request for atrial

14   fibrillation to be added as a related condition; and his claim that he suffered additional injuries

15   and sought authorization for a left shoulder surgery, related to which he claimed that he had

16   received no response.  *See* Dkt. 17, at 1–5.  The Court explained that a portion of the FECA, 5

17   U.S.C. § 8128(b), prohibited judicial review of OWCP benefits determinations unless a

18   complaint brought claims of a constitutional violation that were not "insubstantial."  *See* Dkt. 17,

19   at 6.  And the Court concluded that as alleged, plaintiff's due process challenges were

20   "insubstantial" so that the Court lacked subject matter jurisdiction.  Dkt. 17, at 7.  The Court

21   allowed leave to amend related to plaintiff's claims of "failure to respond to his July 2019

22   request for authorization for left shoulder surgery" because it could be "possible for plaintiff to

23

24

1    allege a viable due process claim" in this regard.  Dkt. 17, at 7.

2          The Court allowed plaintiff to file the operative, amended complaint.  Dkt. 23.  Plaintiff

3    alleges the following in that amended complaint.

4          First, according to plaintiff, in December 2015, a claims examiner requested additional

5    evidence related to plaintiff's right knee revision/replacement, and in January 2016, he replied

6    with additional evidence and a request for atrial fibrillation to be added to his claim and to have

7    physical therapy approved.  Dkt. 23, at 3.  He did not receive a response.  Dkt. 23, at 3.  He

8    claims that he was able to find his letter in his OWCP file, even though OWCP personnel

9    claimed that they had no record of his letter.  Dkt. 23, at 3.

10          Second, in September 2018, plaintiff renewed his request to have atrial fibrillation added

11    to his claim and requested the addition of a left shoulder and neck injury and aggravated PTSD.

12    Dkt. 23, at 7.  An October 19, 2018, letter denied the request related to PTSD and directed him to

13    submit requested evidence within 30 days.  Dkt. 23, at 7–8.  In November, plaintiff responded

14    and reiterated his requests to add the atrial fibrillation, left shoulder and neck treatment, and

15    PTSD, noting that his left shoulder-related requests had not been addressed.  Dkt. 23, at 8.  He

16    asserts that he did not receive any further response.  Dkt. 23, at 8.

17          Third, on July 22, 2019, he requested authorization for an atrial fibrillation ablation

18    procedure and "Watchman Device."  Dkt. 23, at 8.  He again claims that he did not receive a

19    response from OWCP.  Dkt. 23, at 9.

20          Fourth, on July 29, 2019, he requested authorization for left shoulder surgery and, again,

21    for his left shoulder condition to be added to his claim.  Dkt. 23, at 9.  He again alleges that he

22    did not receive a response.  Dkt. 23, at 9.

23          Plaintiff generally alleges that these various delays or failures to respond denied him

24

1    "proper and timely treatment" and also violated his right to due process.  *See* Dkt. 23, at 3, 8–9.

2         Since the filing of the amended complaint, the District Court has scheduled this matter

3    for a jury trial to commence February 13, 2023.  Dkt. 34.  Defendants have filed the motion to

4    dismiss, which is ripe for decision.  Dkt. 36.  The undersigned has also stayed discovery until a

5    final ruling on the motion to dismiss.  Dkt. 43.

6                                    **DISCUSSION**

7    **I.  Legal Principles—FECA and Judicial Review**

8         "FECA establishes a comprehensive and exclusive workers' compensation scheme for

9    federal employees."  *Markham v. United States*, 434 F.3d 1185, 1187 (9th Cir. 2006).  "The

10   Secretary has the authority to administer and decide all questions under FECA, 5 U.S.C. § 8145,

11   and may formulate rules and regulations necessary to administer the Act, 5 U.S.C. § 8149."  *Id.*

12        Title 5, section 8128(b) explicitly forbids courts from exercising jurisdiction over cases

13   challenging the merits of benefits determinations:

14        The action of the Secretary or his designee in allowing or denying a payment under
          this subchapter is--
15        (1) final and conclusive for all purposes and with respect to all questions of law and
          fact; and
16        (2) not subject to review by another official of the United States or by a court by
          mandamus or otherwise.

17

18        There is a narrow exception from § 8128(b), however, that allows a court to consider a

19   constitutional challenge.  *Markham*, 434 F.3d at 1187.  The Ninth Circuit has explained that this

20   exception should not be broadly applied:  "[a] cognizable due process claim must be more than

21   an ephemeral and insubstantial denial of benefits to which a plaintiff does not claim entitlement."

22   *Id.* at 1188.  Thus, whether the Court has subject matter jurisdiction over this case turns on the

23

24

1    substantiality of plaintiff's procedural due process claim.

2    **II. Discussion**

3        A Rule 12(b)(1) motion may be "facial" or "factual." "In a facial attack, the challenger

4    asserts that the allegations contained in a complaint are insufficient on their face to invoke

5    federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the

6    allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for*

7    *Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004); *see also Savage v. Glendale Union*

8    *High Sch.*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003) (explaining that a moving party may convert

9    a facial attack to a factual attack by relying on affidavits or other evidence).

10        Here, plaintiff's claims center on allegations regarding the lack of response to his

11    requests in January 2016, November 2018, and July 2019 regarding atrial fibrillation and left

12    shoulder and neck injury. In support of their motion to dismiss, defendants rely on evidence that

13    they responded in April 2016 (after plaintiff wrote his Congressional representatives), other

14    evidence about their correspondence with plaintiff regarding his various claims, and evidence

15    that they denied the claims related to atrial fibrillation, left shoulder and neck injury, and PTSD

16    in March 2022. *See generally* Dkt. 36. Because they rely on extrinsic evidence to the amended

17    complaint and because they do not otherwise provide authority for construing their motion as a

18    facial attack, the Court construes the motion as a factual attack on jurisdiction.

19        Moreover, the threshold inquiry into jurisdiction in this case intertwines with the merits

20    of the case because both issues require analyzing whether plaintiff can show a procedural due

21    process violation. A court must exercise care when deciding a factual attack on subject matter

22    jurisdiction that is intertwined with the merits of the case in this manner. "[W]hen the

23    jurisdictional issue and the merits are 'intertwined,' or when the jurisdictional question is

24

1  dependent on the resolution of factual issues going to the merits, the district court must apply

2  the summary judgment standard in deciding the motion to dismiss." *Miller v. Lifestyle*

3  *Creations, Inc.*, 993 F.2d 883 (9th Cir. 1993); *see also Leite v. Crane Co.*, 749 F.3d 1117, 1122

4  n.3 (9th Cir. 2014) ("[A] court must leave the resolution of material factual disputes to the trier

5  of fact when the issue of subject-matter jurisdiction is intertwined with an element of the merits

6  of the plaintiff's claim."). Thus, the Court takes as true plaintiff's evidence in response to the

7  motion, in the analysis herein, and does not resolve issues of fact, such as whether there was an

8  unreasonable delay in responding to plaintiff's requests.

9         Claims of entitlement to federal disability payments are a government created property

10  interest. *Raditch v. United States*, 929 F.2d 478, 480 (9th Cir. 1991). "When a government-

11  created property interest is at stake, due process principles require at least notice and an

12  opportunity to respond in some manner, whether in writing or at an oral hearing, before

13  termination of that interest." *Id.*

14         The crux of defendants' argument for dismissal is that plaintiff's claim is insubstantial

15  because defendants did, indeed, respond to plaintiff's various requests—defendants acknowledge

16  a "misfiling" but assert that OWCP took corrective action and issued a decision on all claims.

17  Dkt. 36, at 5. Defendants do not contend that they responded to plaintiff's January 2016 letter

18  (indeed, they acknowledge that they misfiled it). They provide evidence that after plaintiff wrote

19  to Congress and the Secretary of Labor in April 2016, they responded to him and requested that

20  he send a letter to his claims examiner. *See* Dkt. 36, at 3. However, plaintiff provides evidence

21  that in May 2016, rather than following up on his request regarding atrial fibrillation, defendant

22  Tracy Johnson stated that plaintiff's request had been forwarded to a medical advisor. *See* Dkt.

23  42, at 12, 74; *see also Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995) (a *pro se*

24

1    plaintiff's verified complaint may be taken as evidence in support of his claims to the extent his

2    allegations are made on personal knowledge).  Plaintiff asserts that he did not receive any further

3    response related to atrial fibrillation, despite another letter to defendant Johnson in May 2016.

4    *See* Dkt. 42, at 12, 72, 78; *see also* Dkt. 42, at 114–17 (defendant Taylor's letter and medical

5    advisor's opinion that a right knee replacement surgery would not be approved but not discussing

6    atrial fibrillation).   Finally, defendants do not assert that they responded to the late 2018 requests

7    inasmuch as they related to left shoulder and neck injury and reiterated the atrial fibrillation

8    request or this his July 2019 request.  *See* Dkt. 36, at 4–5.  Again, defendants simply rely on the

9    March 21, 2022, decision denying the claims for atrial fibrillation, left shoulder and neck injury,

10   and PTSD.  *See* Dkt. 36, at 5.

11          Defendants argue that now that there is a decision on the claims, plaintiff cannot show a

12   due process violation because he received notice and an opportunity to be heard and because he

13   may now take an administrative appeal from that decision.  *See* Dkt. 36, at 6.  But defendants do

14   not cite any case that holds that if a claim is ultimately denied, the agency may take as long as it

15   wishes to process an application.  In fact, even if a claim is ultimately denied, procedural due

16   process requires that the agency not unreasonably delay its determination.  In *Rodrigues v.*

17   *Donovan*, 769 F.2d 1344, 1345, 1348 (9th Cir. 1985), for example, the Ninth Circuit held that

18   where OWCP suspended benefits without responding to a request for a hearing and took four

19   years to issue a final decision adverse to plaintiff, there was a cognizable due process violation.

20   The Court explained—

21          Although a mere allegation of a constitutional violation would not be sufficient . . .
            the record before us indicates that [plaintiff] may have cognizable due process
22          claims.  [Plaintiff] does not make a facial attack on the constitutionality of the
            FECA procedures themselves, but, instead, asserts that the procedures are
23          unconstitutional as applied to him.  Given the Secretary's failure to provide a
            hearing after the suspension of benefits, despite [plaintiff's] request for one, and

24

the Secretary's considerable delay in deciding [plaintiff's] claim, we do not find the due process challenges insubstantial. *See Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S. Ct. 1487, 1496 . . . (1985) ("At some point, a delay in the post-termination hearing would become a constitutional violation." (citation omitted)); *Kelly v. Railroad Retirement Board*, 625 F.2d 486, 490–91 (3d Cir. 1980).

*Rodrigues*, 769 F.2d at 1348.

Similarly, in *Kelly v. Railroad Retirement Board*, an agency took more than three years and nine months to enter a final decision of "not disabled." 625 F.2d at 489. The Third Circuit held that the nearly four-year delay in issuing a final decision was "wholly inexcusable" where "no valid reason for the delay is given." *Id.* at 490; *see also Loudermill*, 470 U.S. at 547 ("At some point, a delay in the post-termination hearing would become a constitutional violation."); *Ponce v. U.S. Gov't*, No. 3:11-CV-172-AC, 2013 WL 6177812, at *1 (D. Or. Nov. 21, 2013).

Defendants cite *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950) as authority that procedural due process requires only notice and an opportunity for a hearing, but the Supreme Court has also explained the Constitution requires "an opportunity which must be granted at a *meaningful time* and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965) (emphasis added). Here, plaintiff asserts and has provided evidence that between January 2016 and March 2022, defendants failed to respond to his many requests related to atrial fibrillation and left shoulder and neck injury in a meaningful manner, instead delaying issuing a final decision on these requests until March 2022. *See* Dkt. 42, at 23. His evidence that there was a delay of years in responding to his various requests for no apparent reason beyond mishandling his file and overlooking certain of his requests is enough to show a cognizable claim of procedural due process violation.

Defendants also argue that plaintiff has a meaningful post-deprivation remedy because he can pursue his administrative remedies under FECA. Dkt. 36, at 6. The availability of a

1  meaningful post-deprivation remedy can prevent even an improper deprivation of benefits from

2  amounting to a procedural due process violation.  *See Hudson v. Palmer*, 468 U.S. 517, 533

3  (1984); *Raditch*, 929 F.2d at 481.  But here, plaintiff asserts that he did not have a meaningful

4  opportunity to challenge the decisions on his requests because defendant ignored multiple

5  requests that he made over the course of years.  Even where a post-deprivation remedy exists, an

6  agency's extreme delay in providing that remedy can still support the existence of a due process

7  violation.  *See, e.g.*, *Loudermill*, 470 U.S. at 547 (noting that delay in a post-termination hearing

8  becomes a constitutional violation at some point); *Kraebel v. N.Y.C. Dep't of Hous. Pres. &*

9  *Dev.*, 959 F.2d 395, 405 (2d Cir. 1992) ("[E]ven before the state makes a definitive decision as to

10 entitlement, the road to that determination must be paved by due process.  Moreover, due process

11 requires that eligibility for a variety of benefits be processed within a reasonable time. . . .  Stated

12 differently, delay in processing can become so unreasonable as to deny due process."); *Machado*

13 *v. Leavitt*, 542 F. Supp. 2d 185, 196 (D. Mass. 2008) ("delay without justification clearly falls

14 outside of constitutional bounds"); *Cronin v. Town of Amesbury*, 895 F. Supp. 375, 388 (D.

15 Mass. 1995) (citing authorities that a tardy post-deprivation remedy may become a procedural

16 due process violation, at least in "extreme cases").

17       Finally, although defendants contend that plaintiff is simply disagreeing with the

18 decisions issued, review of his materials demonstrates that he cites the ultimate decision on his

19 requests only as background information.  *E.g.*, Dkt. 42, at 1.  The crux of his claim is a violation

20 of procedural due process based on an unreasonably and egregiously lengthy administrative

21 process.

22       In short, taking plaintiff's evidence as true, he has shown a substantial violation of

23 procedural due process related to defendants' handling of his claim, so that the motion to dismiss

24

should be denied.

## CONCLUSION

For the reasons set forth above, the Court recommends denying the motion to dismiss for lack of subject matter jurisdiction.  Dkt. 36.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **July 1, 2022,** as noted in the caption.

Dated this 15th day of June, 2022.

J. Richard Creatura
Chief United States Magistrate Judge